## NO. 25-11410

---

## IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

_____

KENNETH BYNDOM,

Plaintiff-Appellant,

v.

WAFFLE HOUSE, INC. and
EAST COAST WAFFLES, INC.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida, Orlando Division
No. 6:23-cv-01971-JA-LHP

_____

## APPELLEES' ANSWER BRIEF

_____

> MOORE INGRAM JOHNSON &
> STEELE, LLP
> KIMBERLY E. YOUNG
> Florida Bar No.: 109590
> 1000 Legion Place, Suite 701
> Orlando, FL 32801
> Telephone: (407) 367-6233
> Facsimile: (407) 845-1500
> Primary: keyoung@mijs.com
> Secondary:
> sbsalsburystemen@mijs.com
> Secondary: orlservice@mijs.com

**CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1, Defendants/Appellees, Waffle House, Inc. and East Coast Waffles, Inc., hereby state the following individuals and entities have an interest in the outcome of this appeal:

1. Antoon II, Hon. John – District Court Judge

2. Barr, Chad, Counsel for Plaintiff/Appellant

3. Byndom, Kenneth – Plaintiff/Appellant

4. Chad Barr Law – Counsel for Plaintiff/Appellant

5. Damaso, Michael – Counsel for Plaintiff/Appellant

6. East Coast Waffles, Inc. – Defendant/Appellee

7. Gonsalves, Christopher – Counsel for Plaintiff/Appellant

8. Moore, Ingram, Johnson & Steele, LLP – Counsel for Defendants/Appellees

9. Policard, Schammua – Counsel for Defendants/Appellees

10. Trick Ostroff, Heather – Counsel for Plaintiff/Appellant

11. Waffle House, Inc. – Defendant/Appellee

12. Winner, Courtlind - Counsel for Defendants/Appellees

13. Wooten, Kimbrough, Damaso & Dennis, P.A. - Counsel for Plaintiff/Appellant

i

14.    Young, Kimberly - Counsel for Defendants/Appellees

Pursuant to Federal Rule of Appellate Procedure 26.1, there is no other parent corporation or publicly held corporation other than those listed above.

**STATEMENT REGARDING ORAL ARGUMENT**

Defendants/Appellees, Waffle House, Inc. and East Coast Waffles, Inc., respectfully submit that oral argument is not necessary, as the record adequately demonstrates that the district court's ruling should be affirmed.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE

DISCLOSURE STATEMENT ......................................................................i

STATEMENT REGARDING ORAL ARGUMENT ....................................iii

TABLE OF CONTENTS ............................................................................ iv

TABLE OF AUTHORITIES ...................................................................... vi

STATEMENT OF THE ISSUES ..................................................................1

STATEMENT OF THE CASE ..................................................................... 2

SUMMARY OF THE ARGUMENT ............................................................ 9

ARGUMENT ............................................................................................. 11

   I.   Summary Judgment Was Proper on Negligence Claims
      Because the Incident Was Not Reasonably Foreseeable.................... 11

 II.   Summary Judgment Was Proper on Vicarious Liability Claims
      Because the Employee Involved Acted Outside the Scope of his
      Employment.......................................................................................16

III.   Summary Judgment Was Proper on Negligent Employment Claims
      Because They Lacked Evidentiary Support ......................................21

     A.   No Evidence Supports Byndom's Negligent Hiring Claim ............23

     B.   No Evidence Supports Byndom's Negligent Retention and
         Supervision Claims........................................................................ 25

     C.   No Evidence Supports Byndom's Negligent Training Claim. ....... 26

CONCLUSION .......................................................................................... 27

CERTIFICATE OF COMPLIANCE ..........................................................28

CERTIFICATE OF SERVICE ....................................................................28

# TABLE OF AUTHORITIES

**Cases**

Banosmoreno v. Walgreen Co., 299 F. App'x 912 (11th Cir. 2008)...11, 13, 16

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ...............................................9

Garcia v. Duffy, 492 So. 2d 435 (Fla. 2d DCA 1986) ........................21, 22, 24

Graham v. Langley, 683 So. 2d 1147 (Fla. 5th DCA 1996)...........................11

Howard v. Wilkinson, 380 F. Supp. 3d 1263 (M.D. Fla 2019) ............. 22, 25

Malicki v. Doe, 814 So. 2d 347 (Fla. 2002) ................................................23

Morris v. Ross, 663 F.2d 1032 (11th Cir. 1981)...............................................9

Nazareth v. Herndon Ambulance Serv., Inc., 467 So. 2d 1076 (Fla. Dist. Ct. App. 1985) ................................................................................. 17, 19

Resley v. Ritz-Carlton Hotel Co., 989 F. Supp. 1442 (M.D. Fla. 1997).........17

Rojas v. Florida, 285 F.3d 1339 (11th Cir. 2002)...........................................9

Shehanda v. Tavss, 965 F. Supp. 2d 1358  (S.D. Fla 2013).................... 22, 25

Stevens v. Jefferson, 436 So. 2d 33 (Fla. 1989)......................................11, 15

Sussman v. Fla. E. Coast Props., Inc., 557 So. 2d 74 (Fla. 3d DCA 1990) ....17

Valeo v. E. Coast Furniture Co., 95 So. 3d 921 (Fla. 4th DCA 2012)........... 16

Walker v. Feltman, 111 So. 2d 76 (Fla. Dist. Ct. App. 1959) ........................11

Wynn v. City of Lakeland, 727 F. Supp. 2d. 1309 (M.D. Fla. 2010) ............26

Yule v. Ocean Reef Cmty. Ass'n, No. 19-10138-CIV, 2020 WL 3051505 (S.D.

Fla. June 8, 2020) ............................................................................. 25

**Rules**

Fed. R. Civ. P. 56 .................................................................................... 9

## STATEMENT OF THE ISSUES

This appeal concerns whether the District Court properly granted summary judgment in favor of Defendants-Appellees Waffle House, Inc. and East Coast Waffles, Inc. on Plaintiff-Appellant Kenneth Byndom's claims for (1) premises liability negligence, (2) vicarious liability, and (3) negligent hiring, retention, training and supervision.

## STATEMENT OF THE CASE

### Course of Proceedings

Plaintiff-Appellant Kenneth Byndom ("Byndom") initially filed this action against the restaurant owner and occupier Defendants-Appellees Waffle House, Inc. and East Coast Waffles, Inc. (collectively, "Waffle House"), in the Circuit Court of Osceola County, Florida, and then Waffle House removed it to the Middle District of Florida, based upon diversity jurisdiction. (Doc. 1.)

Byndom's Amended Complaint makes claims against Waffle House for premises liability negligence, vicarious liability, and negligent hiring, retention, training, and supervision. (Doc. 19.) Discovery depositions were taken of Plaintiff Byndom, (37-1), Waffle House corporate representative John Fervier ("Mr. Fervier"), (Doc. 37-6), and three other Waffle House employees: Kevin Edwards ("Mr. Edwards"), (Doc. 37-3), Chynna Nembhard, ("Ms. Nembhard"), (Doc. 37-2), and Amanda Palmese ("Ms. Palmese"), (Doc. 37-4).

After the close of discovery, the District Court granted summary judgment to Waffle House on all claims. (Doc. 54.) Byndom now appeals from that judgment.

**Statement of Facts**

This case arises from a customer-employee altercation at a Waffle House restaurant in Kissimmee (the "restaurant") in the early morning hours of July 30, 2022.  The customer, Byndom, arrived at the restaurant shortly before 5:00 am.  (Doc. 37-1 at 44:11–46:22.)  The restaurant is owned and operated by Waffle House.  (Doc. 37-6 at 12:17–13:9.)  Three Waffle House employees were present when Byndom's group arrived: Mr. Edwards, Ms. Nembhard and Ms. Palmese.

As captured by Waffle House security cameras—recording video only and not audio—7 minutes and 27 seconds elapsed between Byndom's group entering the restaurant and Byndom becoming involved in a physical altercation with Mr. Edwards. (Doc. 36 ¶ 2 at 04:52:47–4:59:14.)

Byndom was unable to recall in his deposition testimony any words exchanged between him and Mr. Edwards or any other employee leading up to the altercation:

> Q: Do you remember what you said when you walked into the Waffle House?
> A: To tell you the truth, I don't remember.  I really don't remember.
> Q: Did you shout or yell while you were in the Waffle House?
> A: Um – I don't remember, sir. I don't even understand.
> . . .
> Q: Did anyone say anything to you before you started talking when you arrived at the Waffle House?
> A: I don't remember.

3.

(Doc. 37-1 at 53:10–54:20.)

> Q:    Did you at any point become mad or agitated while in the
>        Waffle House?
> A:    I don't remember, sir.
> Q:    Did you curse at all while you were in the Waffle House?
> A:    I don't remember. I don't remember. No – Just –
> Q:    Did you call the male employee any names while you were
>        in the Waffle House?
> A:    Not to my knowledge . . . Not to my knowledge.  I don't
>        remember.

(Doc. 37-1 at 58:21–59:18.)  Byndom also could not recall anything about his

conduct preceding the altercation, which is shown by surveillance footage:

> Q:    Did you approach the male employee as he was trying to
>        leave?
> A:    I don't remember.
> Q:    Did you get in his walking path while he was attempting to
>        exit?
> A:    No, I don't think so.
> Q:    Did you get in his face while he was trying to leave?
> A:    I don't remember.
> Q:    Were you standing with the male employee in front of the
>        exit of the Waffle House at any point?
> A:    Uh, I don't remember.
> Q:    What started the physical altercation?
> A:    I don't know.
> Q:    What happened exactly?
> A:    I don't even remember.  Too far back, sir.

(Doc. 37-1 at 60:6–61:3.)

Unlike Byndom, Waffle House's employees recalled Byndom's words

and conduct in their depositions.  Specifically, Ms. Nembhard testified that

Byndom "came in huffing and puffing", (Doc. 37-2 at 39:21–23), and was

4.

"barking at everyone on staff," (Id. at 40:8). Ms. Nembhard testified that as she began cooking for Byndom and his group, "[Byndom's] aggression started being directed at [Mr. Edwards]." (Id. at 40:15.) Ms. Nembhard saw "no reason" for Byndom's aggression, which included slurs and threats directed at Mr. Edwards:

> [Byndom] called [Mr. Edwards] a little bitch ass nigger. He said he was going to beat his ass. He called him a punk. Just a lot of that. A lot of that repetitively. You're a little bitch. You're a little bitch ass nigger. I'll beat your ass. I'm a grown F man. I'll beat your ass.

(Doc. 37-2 at 54:7-14.) The below still-shot, stamped 4:57:59, approximately five minutes after Byndom and his party arrived at the restaurant, shows Byndom (brown shirt on left) addressing Mr. Edwards (black shirt on right) across a 4-person booth, gesturing with his hands:



(Doc. 36, ¶ 10.)

5.

Attempting to deescalate the situation, Ms. Nembhard directed Mr. Edwards to leave, explaining at her deposition that:

> [Byndom] wasn't coming at I or [Ms. Palmese] that way, so I thought, okay, let me - - let me try to de-escalate it and get [Mr. Edwards] out of the picture . . . tap out, just get out here . . . I'll take care of it . . . I'll get the food ready.

(Doc. 36-2 at 40:14–20). At approximately 4:58:57 a.m., Mr. Edwards exited from the grill area towards the front door,[1] and when he did so, Byndom approached Mr. Edwards:



(Doc. 36 ¶ 12). As shown on the surveillance footage, Mr. Edwards was then confronted by Byndom as Mr. Edwards walked toward the restaurant's front entry door:

---

[1] Mr. Edwards initially left the restaurant, walking through the grill area and exiting through the same front entry door, but he forgot his phone, so he re-entered, and Byndom appeared calm standing at the high bar, until Mr. Edwards went to walk out the second time. (Doc. 37-3 at 68:25–69:20; Doc. 36 at 4:58:30–4:58:45.)

6.



(Doc. 36, ¶ 13.)  In that exchange, Mr. Edwards testified:

> [Byndom] said that he would kill me. And . . . he's from Chicago, he kills people, and that he would hide my body and nobody will find me. And that I'm a little person. He could - - he - - he could kill me right now and nothing - - like I can't do anything about it.

(37-3 at 74:4–15.)[2]

At approximately 4:59:14, the surveillance footage shows the incident between Mr. Edwards and Byndom, during which Byndom alleges being struck by a waffle pick held by Mr. Edwards.[3]  (Doc. 19 at 3.) Mr. Edwards testified that he struck Byndom in self-defense after Byndom, whom Mr. Edwards perceived as much larger and threatening to "kill him," "bucked up"

---

[2] Ms. Palmese also recalled Byndom advising Mr. Edwards that "he's from Chicago" and "did threaten to hurt [Mr. Edwards]," though did not specifically recall hearing the threats to "kill" or "bury[]" Mr. Edwards.  (Doc. 37-4 at 67:7-18.)

[3] As explained by Waffle House's corporate representative, the waffle pick is a cooking instrument used to separate a cooked waffle from the waffle iron. (Doc. 37-6 at 151:15-22.)

7.

to attack Mr. Edwards. (Doc. 37-3 at 72:7-13.) Ms. Palmese also testified to seeing Byndom "buck[] up" and testified that she was also afraid for Mr. Edwards as Byndom was "a lot bigger." (Doc. 37-3 at 72:8-15).[4]

Fourteen months prior to this altercation, Mr. Edwards applied to Waffle House, and he was hired on May 23, 2021. (Doc. 37-6 at 45:11–49:15.) Mr. Edwards's mother worked for Waffle House, and she served as a character reference for him. (Doc. 37-6 at 39:18–40:14.) Mr. Edwards was never involved with any other incidents with any other customer on any job he ever held, including during his employment with Waffle House prior to the subject incident. (Doc. 37-3 at 82:18–21; Doc. 37-6 at 131:19-24; Doc. 37-2 at 12:2–14; 39:12–15; Doc. 37-4 at 62:22–24.)

Mr. Edwards had no prior convictions, but two pre-hire arrests, (Doc. 37-3 at 54:1–55:3; 59:19–60:24), both of which were known by the Waffle House unit manager who interviewed Mr. Edwards and who was part of the decision to hire Mr. Edwards. (Doc. 37-6 at 73:2–15; 78:17–25; 91:23–92:2.)

Waffle House utilized extensive employee training, including manuals, onsite training, incorporated tests, videos, and shift huddles, which covered

---

[4] This size disparity between Mr. Edwards and Byndom is both evident from the surveillance video (Doc. 36 at 4:58:59) and confirmed by an Osceola County Sheriff's Report estimating that Mr. Edwards weighed "only approximately 140-150lbs and [Byndom] is 260lbs." (Doc. 37-5 at 10.) Following investigation, no charges were brought against Mr. Edwards as a result of the fight with Byndom. (Doc. 37-6 at 125:12-23.)

topics regarding de-escalation and customer interactions, (Doc. 37-6 at 96:21–100:11; 103:5–104:13; 105:20–107:2).

**Standard of Review**

This Court reviews a "district court's grant of a motion for summary judgment *de novo*." Rojas v. Florida, 285 F.3d 1339, 1341 (11th Cir. 2002). Summary judgment is properly granted where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).

A non-moving party must make a sufficient showing on each essential element of the case for which he has the burden of proof. See Celotex, 477 U.S. at 322. And, where the party with the burden of proof responds to a motion for summary without "anything more than a repetition of his conclusional allegations," summary judgment is "not only proper but required." Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

## SUMMARY OF THE ARGUMENT

I.    On Byndom's premises liability negligence claims, the District Court properly granted summary judgment to Waffle House because no

9.

prior incident or circumstance in the record made the incident reasonably foreseeable to Waffle House.

II.   On Byndom's vicarious liability claims, the District Court properly granted summary judgment to Waffle House because Mr. Edwards's actions were outside the scope of his employment and for reasons personal to Mr. Edwards—specifically, in self-defense.

III.  On Byndom's negligent hiring, retention, training and supervision claims, the District Court properly granted summary judgment to Waffle House because:

A.   At the time Mr. Edwards was hired, he had no violent criminal history known to Waffle House—in fact, no criminal convictions at all;

B.   Mr. Edwards had a "clean record" as a Waffle House employee and no previous altercations with customers; and

C.   There was no deficiency in the hiring process nor the training Mr. Edwards received.

## ARGUMENT

### I. Summary Judgment Was Proper on Byndom's Negligence Claims Because the Incident Was Not Reasonably Foreseeable

The District Court properly granted summary judgment on Counts I and V, finding that the subject incident was not reasonably foreseeable to Waffle House. In granting summary judgment, the District Court acknowledged that, under Florida law, a landowner's duties to invitees includes the duty to "'protect customers from criminal attacks that are reasonably foreseeable.'" (Doc. 54 at 10, quoting Walker v. Feltman, 111 So. 2d 76 (Fla. 3d DCA 1959).)

Under Florida law, a plaintiff must demonstrate that a proprietor knew or should have known of a specific risk of harm; here, the dangerous propensities of a particular person. Banosmoreno v. Walgreen Co., 299 F. App'x 912, 913 (11th Cir. 2008). The zone of risk "must have been reasonably foreseeable, not just possible" to give rise to a duty. Graham v. Langley, 683 So. 2d 1147, 1148 (Fla. 5th DCA 1996). As the Florida Supreme Court has long held, a proprietor is not an insurer of a patron's safety. Stevens v. Jefferson, 436 So. 2d 33, 34 (Fla. 1989). There is no record evidence that Waffle House knew or should have known that Mr. Edwards was allegedly violent or that the altercation was reasonably foreseeable. (Doc. 54.)

11.

Arguing that Mr. Edwards's alleged "violence" on Byndom was not just "reasonably foreseeable", but "wholly foreseeable," Byndom relies *exclusively* on the three isolated quotes from Ms. Nembhard's deposition testimony. (See Appellant Br. pp. 9-10, citing Doc. 37-2 at 13:15-14:9; 13:4-14; and 14:21-15:20.) These excerpts are taken out of context, and even when viewed in isolation, fail to establish any reasonable foreseeability of the subject incident. Furthermore, Byndom has not shown – and cannot show – that Waffle House had any knowledge of any dangerous propensities of Mr. Edwards, or that any such propensities existed at all.

In the first quote relied upon by Byndom, Ms. Nembhard responds to the question: "Are the cops called on a regular basis whenever there was an interaction or an altercation with customers?", stating that:

> If it—yeah. If it got—if it got that extent, an altercation, yeah, everything. Every time, we would—yeah. Any store I worked in, if it ever got to that point, we are calling the cops. We're supposed to be there. They're coming at us crazy. The people drink at night, we're open 24/7, so—so things happen, so if it does get to that point, we do call the cops, but a—a lot of the time, we—I—I try to avoid—I try to avoid calls the cops. I mean, if—if we can de-escalate it, get people out—in and out as fast as possible, that's what—that's what we all try to do but if—if things go left, then they go left and then we have to call the cops, so—but after that, after the cops get called or something—like, something happens, they—people usually jump in their car and leave anyway before they shop up, so it de-escalates itself after.

12.

(Doc. 37-2 at 13:15-14:9.) The District Court considered this exact testimony in granting summary judgment to Waffle House, explaining that: "evidence that the police have previously been called to a store in unrelated incidents is not sufficient to create a genuine dispute of fact as to the reasonable foreseeability of a 'targeted, personal assault' that occurs on the property." (Doc. 54 at 11, citing Banosmoreno v. Walgreen Co., 299 F. App'x at 914.) Providing additional context, the District Court's Order notes "Ms. Nembhard also testified that she was unaware of any prior occasion where an employee physically attacked a customer or of any issues involving Mr. Edwards." (Doc. 54, p. 11, citing Doc. 37-2 at 13:4-14.)

Far from suggesting regular physical altercations, Ms. Nembhard's testimony shows that she and other employees were trained to de-escalate potential conflicts and were usually successful in doing so. In fact, Ms. Nembhard testified that it was not common for customers to come in agitated or aggravated:

> Q.    Okay. And before we look at the video, let me ask you this. Did customers frequently come into Waffle House maybe a little agitated or aggravated in the middle of the night?
> A.    Yes and no. I mean, depending on the type of night they had. So sometimes. Not -- not very often.

(Doc 37-2, Pgs. 64:21 – 65:1.)

13.

Remarkably, the same deposition testimony cited by the District Court as demonstrating a **lack** of foreseeability evidence in the record, (Doc. 37-2 at 13:4-14), is the second portion of Ms. Nembhard's deposition cited by Byndom, as supportive of his contention that "the record clearly demonstrates that Mr. Edwards's violence against Byndom was wholly foreseeable." (Appellant Br. at 9, 11.) Ms. Nembhard's deposition testimony, from which the District Court and Byndom reach these opposite conclusions, is as follows:

> Q. When you were asked about any previous altercations that Mr. Edwards might have had with a customer, what was your response to that?
> A. No.
> Q. No means—
> A. Nothing—nothing to that extent. Nothing to that extent. We've had words with people. Of course, it's Waffle House. It—it's crazy. So we've had words with people, but no. It's either we've been able to de-escalate it and get them out or—or—or the cops were called and they leave anyway, so...

(Doc. 37-2 at 13:4-14.)

Contrary to Byndom's assertions, when read in context, Ms. Nembhard's testimony reflects the realities of a 24-hour restaurant where employees occasionally interacted with unruly customers. Ms. Nembhard did not identify any previous physical altercations or aggressive conduct by

14.

Mr. Edwards prior to the subject incident, nor by any employee for that matter.

The third and final portion of Ms. Nembhard's deposition that Byndom relies upon as his exclusive evidence for showing that a physical attack on Byndom by Mr. Edwards was foreseeable is Ms. Nembhard's testimony that the restaurant typically would call the police when a physical altercation occurred, but not ordinarily when merely words were exchanged. (See Appellant Br. at 11-12, citing Doc. 37-2 at 13:4-14.) Although Byndom's brief quotes this testimony, no explanation is offered for how it supports Byndom's assertion. Instead, that testimony further supports that Ms. Nembhard was following her training, to first attempt to de-escalate any verbal disputes and to involve the police if a situation continued to progress. Moreover, she did not testify that any prior incidents were similar to the subject incident, or that Mr. Edwards was involved in them.

There is no evidence of any prior similar incident that occurred that would have put Waffle House on notice of any reasonably foreseeable risk arising from Mr. Edwards interacting with customers. Byndom has not shown that Waffle House knew or should have known that Mr. Edwards was likely to cause harm to Byndom. See Stevens, 436 So. 2d at 34. Here, Mr. Edwards had never engaged in a physical altercation, nor had he even ever

15.

acted aggressively toward a customer. Generalized awareness of occasionally rude or rowdy customers in the environment of a 24-hour restaurant is not legally sufficient to establish reasonable foreseeability. Furthermore, evidence that the police have previously been called to the restaurant in unrelated incidents is not sufficient to create a genuine dispute of fact as to the reasonable foreseeability of a "targeted, personal assault" that occurs on the property. See Banosmoreno, 299 F. App'x at 914. Byndom's select quotations from one employee's testimony cannot manufacture a genuine dispute of fact where the totality of the record demonstrates none exists. Therefore, the District Court properly granted summary judgment, and the ruling should be affirmed.

## II. Summary Judgment Was Proper on Byndom's Vicarious Liability Claims Because the Waffle House Employee Involved Acted Outside the Scope of his Employment

The District Court properly granted summary judgment on Counts II and VI, concluding that Mr. Edwards acted outside the scope of his employment. Byndom contends that because Mr. Edwards was scheduled to work, and employees attempted to de-escalate the situation, his conduct invokes a narrow exception that places him within the scope of employment. (Appellant Br. at 21.) That argument misconstrues both the governing law and the undisputed facts.

16.

To establish vicarious liability, a plaintiff must prove that the employee's conduct was within the scope of employment or that it occurred during the course of employment to further a purpose or interest of the employer. Valeo v. E. Coast Furniture Co., 95 So. 3d 921, 925 (Fla. 4th DCA 2012). "The conduct of an employee is within the scope of his employment, for the purposes of determining the employer's vicarious liability to third persons injured by an employee, only if (1) the conduct is of the kind he was employed to perform, (2) the conduct occurs substantially within the time and space limits authorized or required by the work to be performed, and (3) the conduct is activated at least in part by a purpose to serve the master." Resley v. Ritz-Carlton Hotel Co., 989 F. Supp. 1442, 1448 (M.D. Fla. 1997) (quoting Sussman v. Fla. E. Coast Props., Inc., 557 So. 2d 74, 76 (Fla. 3d DCA 1990)). Generally, batteries by employees are held to be outside the scope of an employee's employment. Nazareth v. Herndon Ambulance Serv., Inc., 467 So.2d 1076, 1078 (Fla. 5th DCA 1985).

Mere employment status does not equate to employer liability. While Mr. Edwards had been working prior to the subject incident, the record indicates that Mr. Edwards had clocked out and was attempting to leave when the altercation began. (Doc 37-6, Pg. 164:5-9) Even assuming Mr. Edwards remained clocked in, his conduct served no conceivable business

17.

interest of Waffle House. While it is undisputed that Mr. Edwards was working a scheduled shift on the date of the subject incident, there is absolutely no indication that his actions were in furtherance of his employment.

Byndom's reliance on Waffle House's de-escalation training is misplaced. Waffle House's corporate representative, Mr. Fervier, testified that de-escalation techniques are intended to calm situations and promote good customer service. (Doc 37-6 at 164:10-165:4) Likewise, Ms. Nembhard's testimony that she and Mr. Edwards tried to implement de-escalation techniques to calm Byndom and serve his food—so he would leave—does not transform Mr. Edward's later personal assault into conduct within his scope of employment. (Doc. 37-2, Pgs. 56:16-57:15). Further, Mr. Fervier clearly testified that use of physical force against a customer is not consistent with Waffle House policies or de-escalation training:

> Q. So in the way that Mr. Edwards responded in this situation, by stabbing a customer in the eye with a waffle pick, you believe, or Waffle House believes, that he maintained his education and acted consistent with Waffle House policies; is that correct?
>
> A. No, that certainly wasn't consistent with Waffle House policy, but Mr. Edwards alleges that he was self-defense, and the State apparently found that, because they chose not to charge him.

(Doc 37-6, Pg. 126:7-15.)

> Q. You agree with me that stabbing a customer in the eye is not a de-escalation technique?
> A. Yes.

(Doc 37-6, Pg. 170:19-21.)

Mr. Edwards's own testimony underscores that his actions were personal, not occupational. Mr. Edwards testified that at the time of the subject incident, he was in the process of leaving the restaurant when Byndom approached him and began making threats towards his life, prompting him to defend himself. (Doc 37-3, Pgs. 69:10-70:4.) Nothing in the record suggests that his response was a function of his job duties or in any way motivated by an intent to serve his employer. (See Record generally.) Mr. Edwards's personal reaction to a perceived threat was neither a step of de-escalation nor an act of customer service.

The District Court explained: "[t]he 'general rule is that an employer cannot be held liable for the tortious or criminal acts of an employee, unless they were committed during the course of the employment.'" (Doc. 54 at 12-13 (quoting Nazareth, 467 So. 2d at 1078).  In his Brief, Byndom argues that the District Court failed "to consider the exception to this rule[.]" (Appellant Br. at 17.)  The alleged "exception" that Byndom claims the District Court "ignores," (id. at 14), is the more complete quote from Nazareth that:

> The general rule is that an employer cannot be held liable for the tortious or criminal acts of an employee, **unless they were**

19.

**committed during the course of the employment and to further a purpose or interest, however excessive or misguided, of the employer**.

Id. (emphasis added). But Byndom is mistaken: the District Court explicitly addresses this "exception" for criminal "acts committed during the course of the employment" (Doc. 54 at 12-13). Thus, rather than "ignore" this authority, the District Court simply concluded that it did not apply.

Consistent with the District Court's ruling, there is no reason for such an exception to apply here. Not only had Mr. Edwards clocked out, (Doc. 37-6 at 163:5-9),[5] but Mr. Edwards's undisputed testimony is that his actions were in response to what he perceived to be the physical threat Byndom was posing to him. (See 37-3 at 72:11-13 ("[A]s he was approaching me, he bucked up to attack me, and I defended myself.").) Nothing cited by Byndom in his Appellant Brief, nor anything else in the record, contradicts this testimony that Mr. Edwards's motivations were personal and not in furtherance of his employment with Waffle House.

Because Mr. Edwards's conduct was personal and unrelated to the furtherance of any Waffle House business, he acted outside of the scope of

---

[5] Appellant's Brief, at 14, states that "[n]othing in the record suggests he clocked out before or during any of the subject altercation." However, Waffle House's corporate representative testified to internal records showing that Mr. Edwards had clocked out prior to the fight. (Doc. 37-6 at 163:5-9.)

his employment. Therefore, the District Court properly entered summary judgment on the vicarious liability claims, and the ruling should be affirmed.

**III.    Summary Judgment Was Proper on Byndom's Negligent Employment Claims Because They Lacked Evidentiary Support**

The District Court granted summary judgment on Byndom's negligent employment claims, Counts III, IV, VII, and VIII, (Doc. 19 at ¶¶ 24-37; 39-42), concluding that there was no evidence of anything in Mr. Edwards's background and employment record suggesting he was unsuitable for his position or that Waffle House's training was insufficient. (Doc 54, Pgs. 13-20):

- "[Byndom] has not pointed to any authority suggesting that Defendants were obligated to conduct a background check on Mr. Edwards based on the nature of his work for Waffle House." (Doc. 54 at 15-16.)

- "[Byndom] has not cited any authority supporting a conclusion that it was unreasonable to hire someone with Mr. Edwards's arrest history to work at Waffle House." (Id. at 16.)

- "Mr. Edwards's co-workers testified that they were unaware of any problems with Mr. Edwards during his employment, and Mr. Fervier confirmed that Mr. Edwards had a 'clean record' as a Waffle House employee. [Byndom] points to no evidence to the contrary." (Id. at 18.)

Rather than attempt to counter the District Court's conclusions with evidence or authority overlooked by the District Court, Byndom's Brief instead makes the conclusory and completely unsupported assertion that,

21.

"the record is clear that Mr. Edwards had a proven propensity for violence, which Waffle House knew about and chose to ignore[.]" (Appellant Br. at 18.)

Under Florida law, "[n]egligent hiring occurs when, prior to the time the employee is actually hired, the employer knew or should have known of the employee's unfitness." Garcia v. Duffy, 492 So. 2d 435, 438 (Fla. 2d DCA 1986). To establish liability for negligent hiring, a plaintiff must show that the employer was required to make an appropriate investigation of the employee and failed to do so. Id. A plaintiff must allege facts to show the investigation would have revealed the unsuitability of the employee for the particular duty to be performed or for employment in general, and that it was unreasonable for the employer to hire the employee in light of the information he knew or should have known. Id. "[T]he inquiry is focused on whether the specific danger that ultimately manifested itself . . . reasonably could have been foreseen at the time of hiring." Id.

Negligent retention and negligent supervision occur "when during the course of employment, the employer becomes aware or should have become aware of problems with an employee and fails to take further action such as investigation, discharge, or reassignment." Howard v. Wilkinson, 380 F. Supp. 3d 1263, 1288 (M.D. Fla 2019) (quoting Shehanda v. Tavss, 965 F. Supp. 2d 1358, 1378 (S.D. Fla 2013)).

22.

Attempting to support this claim of Mr. Edwards's alleged "proven propensity for violence," Byndom cites two arrests prior to his employment by Waffle House. (Appellant Br. at 19-22.)[6]   Other than these two pre-hire arrests, Byndom cites no other record support for his assertion that "Mr. Edwards had a proven propensity for violence." (Appellant Br. at 18-28).

### A.   No Evidence Supports Byndom's Negligent Hiring Claim.

As found by the District Court, "[u]nder Florida law, to establish liability for negligent hiring, a plaintiff must show that:

> (1) the employer was required to make an appropriate investigation of the employee and failed to do so; (2) an appropriate investigation would have revealed the unsuitability of the employee for the particular duty to be performed or for employment in general; and (3) it was unreasonable for the employer to hire the employee in light of the information he knew or should have known."

(Doc. 54, at 14, quoting Malicki v. Doe, 814 So. 2d 347, 362 (Fla. 2002).) Moreover, "the inquiry is focused on whether the specific danger that ultimately manifested itself reasonably could have been foreseen at the time of hiring." Id.

Byndom's contention that Mr. Fervier acknowledged that an

---

[6] Appellant's Brief, at 7, refers to these as "two felony arrests," however, the DUI charge was a misdemeanor.  (Doc. 37-3 at 54:14-15.)

applicant's background was "important but not universally so" is misplaced. Mr. Fervier's testimony reflects a reasonable, case-by-case approach – not indifference to applicant background evaluations. (Doc 37-6 at 52:7-55:3):

> (1) Waffle House rejects job applicants who have been convicted of serious offenses, (id. at 49:13-50:14);
>
> (2) Waffle House does not generally inquire about arrests that did not lead to convictions, (id. at 51:21-52:6, 54:22-55:3);
>
> (3) Mr. Edwards was not convicted at the time of his application and had instead been placed in a diversion program, (id. at 56:16-19);
>
> (4) Waffle House management was aware of Mr. Edwards's 2019 arrest and probation status and believed that multiple mitigating circumstances existed, (id. at 78:18-79:10, 80:3-4); and
>
> (5) Waffle House considers character references when hiring employees, and Mr. Edwards was recommended for the position by his mother, a Waffle House supervisor, (id. at 70:1-12).

(Doc. 54 at 14-15.)

Waffle House's hiring process expressly required all applicants to complete a written application disclosing convictions such as felonies and violent offenses. (Doc 37-6 at 54:7-18). It is undisputed that Mr. Edwards followed this same process. Waffle House's decision to weigh the significance of prior offenses by distinguishing between minor, dated, or nonviolent offenses and those indicating a genuine risk demonstrates an exercise of

24.

judgment consistent with reasonable care under the circumstances. See Garcia, 492 So. 2d at 440.

There is nothing in Mr. Edwards's criminal history that would have made a physical attack on Byndom foreseeable, as required under Florida law to support a negligent hiring claim. Regardless, Byndom's Brief faults Waffle House for not conducting additional inquiry into Mr. Edwards's background. But, as Mr. Fervier testified, Waffle House was aware of Mr. Edwards's arrest history, and no felony convictions would have appeared on any background check run at the time Mr. Edwards was hired—making any additional steps it could have undertaken to investigate his background moot.

### B.    No Evidence Supports Byndom's Negligent Retention and Supervision Claim.

As the District Court explained, under Florida law, "negligent supervision and negligent retention are essentially interchangeable." (Doc. 54 at 17, citing Yule v. Ocean Reef Cmty. Ass'n, No. 19-10138-CIV, 2020 WL 3051505, at *9 n.7 (S.D. Fla. June 8, 2020).) Liability may arise "when during the course of employment, the employer becomes aware or should have become aware of problems with an employee and fails to take further action such as investigation, discharge, or reassignment." Howard, 380 F. Supp. 3d at 1288 (quoting Shehanda, 965 F. Supp. 2d at 1378).

25.

Granting summary judgment, the District Court found that the record evidence showed no prior issue or concern with Mr. Edwards's history; specifically, Mr. Edwards's co-workers, Ms. Nembhard and Ms. Palmese, were unaware of any problems with Mr. Edwards during his employment, "and that Mr. Fervier confirmed that Mr. Edwards had a 'clean record' as a Waffle House employee." (Doc. 54 at 18, citing Doc. 37-2 at 13:2-14, 40:12-15; Doc. 37-4 at 63:22-24; Doc. 37-6 at 40:14-17).  It remains that nothing cited to or argued in Byndom's Brief raises an issue during Mr. Edwards's employment that should have resulted in discipline or termination.

### C.    No Evidence Supports Byndom's Negligent Training Claim.

For a negligent training claim under Florida law, the plaintiff must present evidence to show the training was inadequate. <u>Wynn v. City of Lakeland</u>, 727 F. Supp. 2d. 1309, 1316 (M.D. Fla. 2010).  Here, through its corporate representative, Waffle House presented evidence of the training to the subject employees, including orientation, initial in-restaurant training, employee manuals, continuing on-the-job training, and in-store signs and instructions. (Doc. 37-6 at 96:21–100:11; 103:5–104:13; 105:20–107:2) The evidence in the record also shows those employees followed the pertinent safety and security training by attempting to de-escalate the situation. (Doc. 37-2 at 73:18–78:8; Doc. 37-6at 126:14–19.)  Byndom has failed to identify

from the record any training that was unreasonable or lacking.

## CONCLUSION

For the foregoing reasons, the District Court's Order granting summary judgment to Waffle House should be affirmed.

MOORE INGRAM JOHNSON & STEELE, LLP

*/s/ Kimberly E. Young*
KIMBERLY E. YOUNG, ESQ.
Florida Bar No.: 109590
1000 Legion Place, Suite 701
Orlando, Florida 32801
Telephone: (407) 367-6233
Facsimile: (407) 845-1500
Primary: keyoung@mijs.com
Secondary: sbsalsburystemen@mijs.com
Primary: cawinner@mijs.com
Secondary: lmkrasnow@mijs.com
Secondary: orlservice@mijs.com
Counsel for Appellees

**CERTIFICATE OF COMPLIANCE**

This Brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B), excluding the parts of the Brief exempted by Fed. R. App. P. 32(f)., This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). This Brief contains 6,269 words it is prepared using 14-point Georgia font.

*/s/ Kimberly E. Young*
KIMBERLY E. YOUNG, ESQ.
Florida Bar No.: 109590
MOORE INGRAM JOHNSON & STEELE, LLP
Counsel for Appellees

**CERTIFICATE OF SERVICE AND FILING**

I hereby certify that on November 25, 2025, I filed the foregoing Appellees' Brief with the Court using CM/ECF and served a copy upon all counsel of record.

*/s/ Kimberly E. Young*
KIMBERLY E. YOUNG, ESQ.
Florida Bar No.: 109590
MOORE INGRAM JOHNSON & STEELE, LLP
Counsel for Appellees

Service List:
CHAD A. BARR, ESQUIRE
CHAD BARR LAW
238 North Westmonte Drive
Suite 200
Altamonte Springs, Florida
service@chadbarrlaw.com
linda@chadbarrlaw.com
chad@chadbarrlaw.com